The CHESAPEAKE & OHIO
RAILWAY COMPANY, et
al., Plaintiffs,

v.

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON and London Market Insurance Companies, et al., Defendants.

Civ. A. No. 85–3162 SSH.

United States District Court,
District of Columbia.

May 25, 1989.

Jerold Oshinsky and Sherry W. Gilbert, Washington, D.C., for plaintiffs.

Mark S. Weiss and Robert E. Heggestad, Washington, D.C., for Universal Reinsurance Co., Southern American Ins. Co., Pacific Ins. Co. and Harbor Ins. Co.

James F. Lee, Jr. and Margaret H. Warner, Washington, D.C., for Travelers Indem. Co.

Dennis M. Flannery, Jeffrey D. Robinson and A. Stephen Hut, Jr., Washington, D.C., for Ins. Co. of North America and Calif. Union Ins. Co.

John P. Arness and William J. Bowman, Washington, D.C., for First State Ins. Co. and Pine Top Ins. Co.

Stephen L. Nightingale and James E. Rocap, Washington, D.C., for Aetna Cas. & Sur. Co. and Federal Ins. Co.

Roger E. Warin and Steven K. Davidson, Washington, D.C., for Home Ins. Co.

Robert L. Ferguson, Jr., Washington, D.C., and Robert A. Krause, Baltimore, Md., for Midland Ins. Co.

Richard W. Boone and Vicki J. Hunt, Arlington, Va., for American Cas. Co., Continental Cas. Co., Gen. Reins. Corp. and Wausau Underwriters Ins. Co.

Richard H. Gimer, Washington, D.C., for Argonaut Ins. Co., Transp. Mut. Ins. Co., Falcon Ins. Co., Mut. Fire, Marine and Inland Ins. Co.

George Marshall Moriarty and Kenneth W. Erickson, Boston, Mass., and Thomas W. Susman, Washington, D.C., for Certain Under. at Lloyd's London and London Market Ins. Companies, Intern. Surplus Lines Ins. Co. and North River Ins. Co.

Charles R. McBrier, Jr., Rockville, Md., for Highlands Ins. Co.

James L. Kelly, Jr., Rockville, Md., for Nationwide Mut. Ins. Co.

James P. Schaller, M. Elizabeth Medaglia and Antoinette A. LeBel, Washington, D.C., for American Home Assur. Co., Granite State Ins. Co., Ins. Co. of State of Penn. and Lexington Ins. Co.

William E. Artz, Benjamin W. Glass, III and Joan E. Jennings, Arlington, Va., for Interstate Indemn. Co.

Robert J. Bates, Jr., Chicago, Ill., and Marvin G. Pickholz, Washington, D.C., for American Re-Insurance Co.

K. Thomas Shahriari, Washington, D.C., for Firemen's Fund Ins. Co.

Kevin O. Faley, Washington, D.C., and Lane J. Ashley and Alan J. Freisleben, Los Angeles, Cal., for Allianz Underwriters Ins.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter, as well as what is perhaps best characterized as a companion case, *Western Maryland Railway Company v. Harbor Insurance Company*, Civil Action No. 85–3163, are before the Court on a variety of motions. Because decisions reached in this action necessarily affect the companion case, a separate Memorandum Order also is being issued today in *Western Maryland*.

### Background

The three plaintiffs in this action are Chesapeake & Ohio Railway Company (C & O), Baltimore & Ohio Railway Company (B & O), and Seaboard System Railroad Incorporated (Seaboard). The defendants are a large number of insurance companies and underwriters.[1] Plaintiffs seek declaratory and other relief and invoke diversity jurisdiction, the availability of which is one of the key issues in dispute.

Plaintiffs allege that over a number of years (from approximately 1947 to 1984) they purchased liability or indemnity insurance policies from defendants that extend coverage to plaintiffs directly or by operation of law. C & O, B & O, and Seaboard have all been subject to asbestos-related bodily injury lawsuits in the past and expect to defend against additional such suits in the future. They contend that each of the policies at issue provides the insured plaintiff with coverage against liability arising from bodily injury, including asbestos-related bodily injury. They further allege that each of the defendants has failed to fulfill its obligation to pay plaintiffs' legal liability in asbestos-related suits.

1. The original defendants were: Certain Underwriters at Lloyd's, London and the London Market Insurance Companies; London & Edinburgh Insurance Company, Limited; Aetna Casualty & Surety Company; Allianz Insurance Company; American Casualty Company of Reading, Pennsylvania; American Home Assurance Company; American Re–Insurance Company; Argonaut Insurance Company; California Union Insurance Company; Casualty Insurance Company; Continental Casualty Company; Falcon Insurance Company; Federal Insurance Company; First State Insurance Company; General Reinsurance Corporation; Glacier General Assurance Company; Granite State Insurance Company; Harbor Insurance Company; Highlands Insurance Company; Home Insurance Company; Insurance Company of North America; The Insurance Company of the State of Pennsylvania; International Surplus Lines Insurance Company; Interstate Indemnity Company; Lexington Insurance Company; Midland Insurance Company; Mission Insurance Company; The Mutual Fire, Marine and Inland Insurance Company; Nationwide Mutual Insurance Company; North River Insurance Company; Pacific Insurance Company; Pine Top Insurance Company; Southern American Insurance Company; Transportation Mutual Insurance Company; Travelers Indemnity Company; United States Liability Insurance Company; Universal Reinsurance Company; and Wausau Underwriters Insurance Company.

The Court granted the motions of Glacier General Assurance Company and Pine Top Insurance Company to dismiss. Plaintiffs dismissed the action as to Certain Underwriters at Lloyd's, London, the London Market Insurance Companies, and London and Edinburgh Insurance Company. Allianz Insurance Company was also dismissed, and Allianz Underwriters was added as a party. Finally, plaintiffs and Midland Insurance Company reached a stipulated dismissal, as was also true with respect to defendant Mutual Fire, Marine and Inland Insurance Company. All defendants have moved to dismiss the complaint, with the exception of Casualty Insurance Company, which has never responded to the complaint.

C & O, B & O, and Seaboard filed this action on October 3, 1985. On the same date, Western Maryland filed its action. All of the defendants in the latter suit are also defendants in this case.[2] C & O, B & O, Seaboard, and Western Maryland are all subsidiaries of CSX Corporation.[3]

Without addressing the merits of plaintiffs' claims, defendants move to dismiss on several grounds. Defendants contend that plaintiffs—who, under defendants' theory, should include Western Maryland—purposefully divided their claims in order to bring suit in federal, rather than state, court.[4] Defendants argue that plaintiffs should have joined an indispensable party— Western Maryland, the plaintiff in the companion case. Defendants do not appear to allege that plaintiffs have manufactured diversity in contravention of Fed.R.Civ.P. 17(a), despite their contentions regarding Western Maryland's status as a "shell corporation." [5] Their argument is directed to Western Maryland's role as an indispensable party. "[A] party cannot manufacture diversity that otherwise would not exist.... Nor can the party avoid the requirement of complete diversity by failing to join a nondiverse party if that person is 'indispensable' to the litigation." 14 C. Wright, A. Miller & E. Cooper, *supra*, at § 3637 (footnotes omitted). Joinder of Western Maryland would destroy diversity jurisdiction because Western Maryland is non-diverse to defendants in the instant action.

Defendants further argue that diversity is absent in the present action even without joinder of Western Maryland. Plaintiffs alleged diversity among those already parties to this action by claiming that C & O's principal place of business is Baltimore, Maryland. Defendants dispute this assertion, and counter that C & O's principal place of business at the time this action was filed was Cleveland, Ohio. Because certain defendants are also citizens of Ohio, such a finding would be fatal to diversity jurisdiction in this case.

Defendants further argue that, even if the Court decides that it does have jurisdiction, it should decline to exercise that jurisdiction. Defendants urge dismissal based on the permissive language of 28 U.S.C. § 2201, which provides that courts "may declare the rights and other legal relations of any interested party, whether or not further relief is or could be sought." Finally, certain defendants have moved to dismiss for lack of personal jurisdiction.

*Discussion*

I. Corporate Structure of Plaintiffs

In arguing that Western Maryland is a necessary party to the instant action (a predicate to finding that Western Maryland is an indispensable party), defendants rely in part on the corporate structure of the CSX plaintiffs. This corporate structure is an underlying element of each of defendants' dismissal theories; accordingly, it is examined in detail.

C & O and Seaboard are wholly owned subsidiaries of CSX Corporation. (Plaintiffs' Opposition at 2, n1.) That is, CSX comprises the so-called "Chessie System" of C & O, B & O, and Western Maryland, and the "Seaboard System." "C & O owns 98% of B & O's stock and 100% of Western Maryland's stock." *Id.* All of Western Maryland's operations are conducted by and for B & O, and have been since May

---

**2.** Those defendants are: Harbor Insurance Company; Certain Underwriters at Lloyd's, London; London Market Insurance Companies; Travelers Indemnity Company; Universal Reinsurance Corporation; International Surplus Lines Insurance Company; Southern American Insurance Company; Pacific Insurance Company; California Union Insurance Company; and First State Insurance Company.

**3.** The structure of the CSX Corporation is discussed in more detail *infra*.

**4.** Defendants hypothesize that plaintiffs' motive was to benefit from the decision this Circuit reached in *Keene Corporation v. Insurance Company of North America*, 667 F.2d 1034 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). The Court has not examined the effect, if any, of the *Keene* decision on this action.

**5.** Rule 17(a) provides in pertinent part that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a).

1983. *Id.* at 3. Western Maryland does not conduct any rail operations and has no employees. (Defendants' Motion to Dismiss at 7; Meiser Deposition at 144, 159.)

The following graph illustrates the CSX corporate structure at the time this suit was filed:

The three Chessie System railroads shared most officers and directors at the time of filing. For example, all officers of C & O were also officers of B & O. All of Western Maryland's directors were officers of B & O and C & O. (Admissions of C & O at ¶ 40.) Western Maryland, B & O, and C & O had the same president, the same executive vice presidents, and the same general counsel.[6] *Id.* at ¶¶ 41–43, 45. Although plaintiffs argue that Western Maryland is a separate corporate entity, defendants contend that Western Maryland "is in fact no more than an asset shell" conducting business on behalf of its parent corporation.[7] (Defendants' Reply Brief at 7.)

## II. Diversity Jurisdiction and Fed.R.Civ.P. 19

It is well-settled that complete diversity between plaintiffs and defendants is required for diversity jurisdiction. *See, e.g., American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951); 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3606 (1986). Diversity determinations are made based on the relevant facts at the time of filing the complaint. *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); *Prakash v. American Univ.,* 727 F.2d 1174, 1179 n. 28 (D.C.Cir.1984). Although defendants do challenge the existence of diversity as between plaintiffs and defendants in the instant case, their primary objection is to what they characterize as improper dividing of claims between this action and the *Western Maryland* suit in an effort to create diversity jurisdiction.

## A. *Indispensable Parties Under Rule 19*

Rule 19 specifies those persons whose presence is desirable in ongoing litigation:

**(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relat-

---

**6.** The Seaboard System's management also was entwined with that of the Chessie System. Seaboard, C & O, and B & O shared the same chairman and vice-chairman, as well as seven directors. (Seaboard Admissions at ¶¶ 11–12, 14.)

**7.** Despite plaintiffs' vigorous assertions as to Western Maryland's status as a separate corpo-

ration entitled to bring suit on its own behalf, the Court notes that in opposing a similar motion to dismiss, Western Maryland chose to rely upon the opposition filed by plaintiffs in this case. Although not improper, that decision reflects the close alignment of interests among the four CSX plaintiffs.

ing to the subject of the action and is so situated that the disposition of the action may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff....

Fed.R.Civ.P. 19(a). The rule sets out a two-part test. First, the Court must determine whether the person is a necessary party as described in subsection (a)(1)–(2). Second, if joinder of such a necessary party is not feasible, the Court must decide under Rule 19(b) whether "in equity or good conscience" the action should be dismissed or should proceed without the absent party.

### 1. Is Western Maryland a Necessary Party?

■ The inquiry imposed by Rule 19(a) is a practical one. As one court has noted:

There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). Underlying policies include plaintiff's right to decide whom he shall sue, avoiding multiple litigation, providing the parties with complete and effective relief in a single action, protecting the absentee, and fairness to the other party.

*Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982). Subsection (a)(1) speaks in terms of "complete relief [as to] those already parties." If such complete relief is impossible without joinder, then the absent party is a necessary one. This subsection does not require Western Maryland's joinder. Complete relief could be fashioned for the plaintiffs and defendants already present in the litigation; defen-

dants' concern is with potential future liability imposed by Western Maryland's own, separate action.

At issue, then, is whether Western Maryland is conditionally necessary under Rule 19(a)(2). With respect to the subject matter of this suit—asbestos-related insurance liability—the four CSX plaintiffs seek virtually identical declaratory relief. In the second suit, Western Maryland seeks relief as to 40 insurance policies, 36 of which are also at issue in this case. Thirty-two of these common policies provide coverage for C & O and B & O as well as for Western Maryland; the remaining four provide coverage for Seaboard, C & O, B & O, and Western Maryland. At least 31 of the common policies list either Chessie System or CSX Corporation as the insured. (Defendants' Motion to Dismiss at 14.)

Defendants express concern that the insurance policies incorporate a single aggregate limit for all occupational disease claims.[8] If true, the four plaintiffs would be common claimants to a limited fund, creating the risk that defendants could be subject to multiple or inconsistent obligations absent joinder of Western Maryland to this action. Plaintiffs, on the other hand, accuse defendants of mischaracterizing the asbestos claims as occupational disease claims. They contend (1) that the asbestos claims are based on the Federal Employers' Liability Act (FELA) and as such are not occupational disease claims, (2) that the insurance policies distinguish between the FELA and occupational disease claims, and (3) that FELA claims are not subject to an aggregate limit. Plaintiffs wish to characterize the asbestos claims as bodily injury suits under the FELA, instead of as occupational disease claims subject to the aggregate limits.

Plaintiffs' attempt to sidestep the aggregate limit problem creates an artificial distinction between more conventional tort suits under the FELA and those involving

---

**8.** For example, one of the policies is number KSPL 403 7650, issued to Western Maryland by The Travelers Indemnity Company; it sets an aggregate limit on occupational disease claims of $2,000,000. (Parkinson Affidavit, Exhibit E.)

Another policy, Harbor Insurance Company's number 118635, names the Chessie System Inc. as the insured and sets a cap of $3,500,000 for occupational disease claims. *Id.*

occupational diseases. The language contained in the policies does not mean that a claim actionable under the FELA cannot as a matter of law be an occupational disease claim. The FELA covers work-related injuries, a category that includes occupational disease claims.[9] *See, e.g., Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (interpreting FELA to cover negligent acts that expose employees to occupational diseases, here silicosis); *Wooden v. Missouri Pacific R.R.,* 862 F.2d 560 (5th Cir.1989) (suit under FELA for silicosis claim); *Kichline v. Consolidated Rail Corp.,* 800 F.2d 356 (3rd Cir.1986) (suit under FELA for pulmonary disease allegedly aggravated by exposure to diesel fumes). A better reading of the policies, and one that comports with the FELA, is that the insurance policies cover personal injury claims, but also set liability limits on occupational disease claims. Moreover, plaintiffs' own position is undermined by their concession that asbestos-related claims are handled by an employee whose title is "Manager, Occupational Illness Claims." (Meiser Deposition II at 198.) Accordingly, the Court concludes that the four plaintiffs are claimants to a common, limited fund.[10]

By virtue of the aggregate limits imposed in common insurance policies, Western Maryland does have an interest in this suit. Thus, the Court must decide under Rule 19(a) whether "the disposition of the action in [Western Maryland's] absence may (i) as a practical matter impair or impede [its] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." It is abundantly apparent that Western Maryland believes its absence will not put its own interests at risk. The decisionmakers at Western Maryland, who also make decisions for C & O and B & O, chose the litigation strategy being so vigorously contested in this suit.

Defendants, however, risk incurring multiple or inconsistent obligations. As noted earlier, most of the insurance policies common to both suits were issued in the name of the CSX Corporation or the Chessie System rather than to individual railroad companies as separate insureds. Moreover, those policies incorporate a single aggregate limit for occupational disease claims, including asbestos-related claims. This is not a situation in which there are multiple claimants to a fund, only one of which has the right to recover. Instead, it appears that all four plaintiffs—suing over rights under the same policies issued to the samed named insured—are claimants to a limited fund and that Western Maryland is a necessary party to this action.

2. Analysis Under Rule 19(b)

■ Although Western Maryland is a necessary party, its joinder is not feasible, for to join Western Maryland would destroy diversity jurisdiction. Thus, the Court must decide whether in "equity and good conscience" the action should be dismissed or proceed without Western Maryland. Rule 19(b) provides:

> **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

---

**9.** The statute reads in part: "Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51 (1982). There is no exclusion for injuries that cause or result in

occupational diseases, beyond the negligence requirement.

**10.** This conclusion is bolstered by the inherent problems with respect to competing claims to various layers of coverage provided to plaintiffs under different insurance policies. For example, in examining the policies that cover 1983–84, all four plaintiffs claim a right to the first $8 million in policy proceeds. (Parkinson Affidavit, Exhibit B.)

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

.    .    .    .    .

Fed.R.Civ.P. 19(b). The rule uses the word "indispensable" in a conclusory fashion—the Court must perform a fact-intensive analysis before deciding whether to dismiss:

> The decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.... To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him.

*Provident Tradesmens Bank & Trust v. Patterson,* 390 U.S. 102, 118–19, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968).

Looking to the facts in this case, C & O, itself a wholly owned subsidiary of CSX, owns all of Western Maryland's stock. The two railroads have brought virtually identical suits seeking to settle questions of liability on insurance policies, many of which name CSX or the Chessie System as the insured rather than an individual railroad.[11] Weighing prejudice to the current parties in this action if Western Maryland is not joined, defendants risk future inconsistent obligations, as discussed *supra.* This problem is directly related to the manner in which the insurance policies have been issued as well as the corporate structure of the CSX plaintiffs. The insurance companies also face double litigation on the liability issue posed by these two ongoing actions.[12]

Turning to the question of prejudice to the absent party, Western Maryland, any prejudice has been brought about by Western Maryland and its corporate fellows. Indeed, the CSX plaintiffs dispute the existence of any prejudice as to them or to the defendants. Nevertheless, the Court is troubled by the manner in which the claims have been divided in these actions, which appears to have been done solely for the purpose of obtaining diversity jurisdiction. Given the relationship among the plaintiffs, and the names under which many of the policies were issued, one might characterize CSX as the "absent plaintiff" on whose behalf both of these actions have been brought. Concomitantly, the Court must at the least question whether Western Maryland's interests have been subverted to those of the parent corporation, as well as to C & O.

In terms of shaping relief to lessen prejudice, the Court recognizes that both actions are in front of the same court, and that the Court is thus in a position to try to fashion relief in one suit so as not to unduly prejudice the parties in the other. But that statement only serves to underscore what is so troubling about the present posture of these actions—the extent to which the interests of the parties are entwined. A further problem is that the declaratory actions at issue here can only address rights and liabilities under the policies. The underlying asbestos-related claims are not before the Court, and the parties con-

---

11. In some respects, the facts of this case are similar to those of *Acton Co. v. Bachman Foods,* 668 F.2d 76 (1st Cir.1982), in which a subsidiary's parent corporation was found to be indispensable.

12. They also face the prospect of future litigation (assuming they lose on the issue of liability) to sort out actual claims against the policies brought on behalf of CSX or its subsidiaries.

cede that the total liability is unknown. Equally unknown at this juncture is how that total liability is divided among the plaintiffs. Thus, the Court would not be able to fully resolve the competing claims to the limited aggregate fund in these actions.[13]

The Court concludes, after looking at the totality of the circumstances, that Western Maryland is not only necessary to this action, but indispensable. The result—which is dismissal of this action—may seem harsh. But plaintiff "has chosen a federal forum, and can[not] equitably complain about the court's jurisdictional limitations." *Acton Co. v. Bachman Foods,* 668 F.2d 76, 80 (1st Cir.1982).

An appropriate Order accompanies this Memorandum Opinion.[14]

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court concludes that Western Maryland Railway Company is an indispensable party to this action. Because joinder of Western Maryland would destroy diversity jurisdiction, it hereby is

ORDERED, that defendants' motion to dismiss is granted. It hereby further is

ORDERED, that all other outstanding motions are denied as moot.

SO ORDERED.

13. Non-parties to these suits cannot be bound by the decisions reached in either case.

14. Because the Court concludes that Western Maryland is an indispensable party to this action, it does not reach the other issues raised by defendants.