**WESTERN MARYLAND RAILWAY COMPANY, et al., Appellants,**

v.

**HARBOR INSURANCE COMPANY, et al., Appellees.**

Nos. 89–7154, 89–7155.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1990.

Decided Aug. 3, 1990.

Sherry W. Gilbert, with whom Jerold Oshinsky and Christopher J. Cherry was on the brief, for appellants in Nos. 89–7154 and 89–7155.

James W. Greene, II, for appellees in Nos. 89–7154 and 89–7155. Also on the

brief were Dennis M. Flannery, David M. Becker, and Lynn Bregman for Ins. Co. of North America and California Union Ins. Co.; James E. Rocap, III, for Aetna Cas. and Sur. Co. and Federal Ins. Co.; Kevin Faley, for Allianz Underwriters Ins. Co.; James P. Schaller, M. Elizabeth Medaglia, and Antoinette P. LeBol for American Home Assur. Co., et al.; Richard H. Gimer and Stephen L. Humphrey, for Falcon Ins. Co.; William J. Bowman for First State Ins. Co.; Roger E. Warin and Steven Davidson for Highlands Ins. Co. and The Home Ins. Co.; George Marshall Moriarty, Kenneth W. Erickson, and Eric A. Smith for Intern. Surplus Lines Ins. Co. and The North River Ins. Co.; Brian C. Shevlin for Interstate Indem. Co.; David O. Godwin, Jr. for Nationwide Ins. Co.; Lawrence E. Carr, Jr. and Margaret W. Warner for The Travelers Ins. Co.; Robert E. Higgestad for Universal Reinsurance Co. and Southern American Ins. Co.; and John F. Mahoney, Jr. for U.S. Liability Ins. Co. Mark Mathews also entered an appearance for California Union Ins. Co.

Before EDWARDS, SENTELLE, and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge CLARENCE THOMAS.

CLARENCE THOMAS, Circuit Judge:

■ When a party to a federal lawsuit moves to join a nonparty resisting joinder, the district court must answer three questions: Should the absentee be joined?[1] If the absentee should be joined, can the absentee be joined?[2] If the absentee cannot be joined, should the lawsuit proceed without her nonetheless?[3] "To use the familiar [if] confusing terminology," *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968): Is the absentee's presence necessary? If the absentee's presence is necessary, is her joinder feasible? If the absentee's joinder is not feasible, is she indispensable?

In each of the two cases in this consolidated appeal the district court held that the plaintiffs in the other were necessary for the just adjudication of the action in question, that joining the other plaintiffs was not feasible, and that the missing parties were indispensable. The district court accordingly dismissed both suits. *Chesapeake & Ohio Ry. v. Certain Underwriters at Lloyd's, London*, 716 F.Supp. 27 (D.D.C.1989); *Western Md. Ry. v. Harbor Ins. Co.*, Civ. No. 85–3163–SSH (D.D.C. May 25, 1989) (incorporating opinion in *Chesapeake & Ohio*). We decide here that regardless of whether it was feasible, the absentees' joinder in these cases was unnecessary, and the absentees, therefore, could not have been indispensable. We accordingly reverse and remand.

We first sketch the backdrop of this appeal. Both *Chesapeake & Ohio* and *Western Maryland* arose from a spate of asbestosis claims filed by railroad employees under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, which in turn led the railroads to sue the carriers of the railroads' indemnity and liability insurance. In *Chesapeake & Ohio*, three railroads sued forty insurers, seeking damages and a declaration of the railroads' rights under about six hundred policies. *See* 716

---

1. *See* Fed.R.Civ.P. 19(a):

   A person ... shall be joined as a party in [an] action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

2. *See id.* (requiring joinder of nonparty meeting rule 19(a) test if nonparty is a "person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action").

3. *See* Fed.R.Civ.P. 19(b):

   If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

F.Supp. at 28 & n. 1. In *Western Maryland,* filed the same day, one railroad sued nine insurers, seeking similar relief under forty similar policies. *See Chesapeake & Ohio,* 716 F.Supp. at 29 & n. 2. All of the defendants in *Western Maryland* were also defendants in *Chesapeake & Ohio,* and the plaintiff in *Western Maryland* was a wholly owned subsidiary of one of the plaintiffs in *Chesapeake & Ohio. See* 716 F.Supp. at 29–30 (detailing railroads' corporate structure). Thirty-six of the insurance policies issued to the plaintiff in *Western Maryland* were also issued to some of the plaintiffs in *Chesapeake & Ohio. See* 716 F.Supp. at 31. All of the policies in both cases imposed "occurrence limits" for personal injury and property damage claims and all imposed "aggregate limits" for claims based on "occupational diseases." *See id.* at 31 & n. 8. Left for decision in each lawsuit was whether occupational disease claims included the employees' FELA claims based on asbestosis.

*Western Maryland* and *Chesapeake & Ohio* eventually came before the same district judge, and about seven months after the filing of the complaints, all of the defendants in both actions moved concurrently to dismiss. The defendants in *Chesapeake & Ohio* maintained that that action could not justly be adjudicated without the plaintiff in *Western Maryland,* and that because the *Western Maryland* plaintiff could not be joined in *Chesapeake & Ohio* without destroying diversity, the court should dismiss the latter case under Fed.R. Civ.P. 19. *See* Defendant's Motion to Dismiss at 1–2, *Chesapeake & Ohio,* Civ. No. 85–3162–SSH (D.D.C. Apr. 16, 1986). The defendants in *Western Maryland* repeated the arguments that they made in *Chesapeake & Ohio,* averred that the *Western Maryland* action was "duplicative, and merely a device to create diversity of citizenship," and asked the court to dismiss *Western Maryland.* Defendant's Motion to Dismiss at 2, *Western Maryland,* Civ. No. 85–3163–SSH (D.D.C. Apr. 16, 1986).

The district court granted both motions and dismissed both suits. It held that the railroads were not necessary parties within the meaning of rules 19(a)(1) or 19(a)(2)(i), but that the railroads were necessary parties under 19(a)(2)(ii). In its 19(a)(2)(ii) analysis, the court first contrasted the parties' respective positions on how to characterize the FELA claims for asbestosis: as occupational disease claims, subject to the policies' aggregate limits, or as claims for bodily injury, covered only by the limits per occurrence. The "better reading of the policies," in the district court's view, was the former one, 716 F.Supp. at 32, and that reading meant that "the four plaintiffs are claimants to a common, limited fund," *id.*

With the railroads' recovery for their employees' FELA claims against them capped by the aggregate limits, the plaintiff in *Western Maryland* had "an interest relating to the subject of" *Chesapeake & Ohio.* Fed.R.Civ.P. 19(a)(2). According to the district court, moreover, the failure to join all of the railroads would leave all of the insurers "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed.R.Civ.P. 19(a)(2)(ii); *see* 716 F.Supp. at 32.[4] The district court held that joinder was not feasible because joining the railroads in the two suits would undo diversity of citizenship in both and thus deprive the court of jurisdiction. The court then decided "in equity and good conscience" that neither action should proceed without the absent parties. Fed.R.Civ.P. 19(b). It therefore dismissed both cases. *See id.*

As we have explained above, a district court deciding a motion under rule 19 should answer three questions in sequence.[5] The court need only decide

---

**4.** The district court explained:

This is not a situation in which there are multiple claimants to a fund, only one of which has the right to recover. Instead, it appears that all four plaintiffs—suing over rights under the same policies issued to the samed [sic] named insured—are claimants to a limited fund....

*Chesapeake & Ohio,* 716 F.Supp. at 32.

**5.** *See also* Freer, *Rethinking Compulsory Joinder: A Proposal to Restructure Federal Rule 19,* 60 N.Y.U.L.Rev. 1061, 1076 (1985) (Rule 19 "prescribes a three-step process, although this fact is obscured by its language."); *id.* at 1076–77 & n. 76.

whether an absent party is indispensable if it determines that the party's joinder is infeasible, and it need only decide whether joinder is feasible if it decides that an absentee's presence is necessary. We hold here that regardless of whether the plaintiffs absent from each of these actions could have been joined in the other, their presence was not necessary. It follows, then, that dismissal was unwarranted.

We agree with the district court's conclusion that with respect to rules 19(a)(1) and (a)(2)(i), the absent railroads were not necessary for just adjudication. Even in the absence of some of the railroads, the court could accord complete relief in each case to those already parties. Fed.R.Civ.P. 19(a)(1); *see* 716 F.Supp. at 31. Because Western Maryland and its corporate kin have chosen to litigate separately, moreover, the district court had reason to conclude that disposition of one suit in the absence of the railroads in the other would not "as a practical matter impair or impede [the railroads'] ability to protect that interest." Fed.R.Civ.P. 19(a)(2)(i); *see* 716 F.Supp. at 32.

■ We depart from the district court, however, in our analysis under rule 19(a)(2)(ii).[6] Rule 19(a)(2)(ii) directs that an absentee be joined if disposition of the action without her might leave those present "subject to a *substantial risk* of incurring ... inconsistent obligations." Fed.R.Civ.P. 19(a)(2)(ii) (emphasis added). A recent decision ordering the joinder of an absent insured illustrates why here, in contrast, the railroads' decision not to join one another subjected the insurers to little or no risk of the kind that rule 19 is designed to avert.

In *In re Forty–Eight Insulations, Inc.*, 109 B.R. 315 (N.D.Ill.1989), Forty–Eight Insulations, a manufacturer of products containing asbestos, sued twenty-two insurers for a declaration of the insurers' obligations to Forty–Eight under policies issued to Forty–Eight's corporate parent, Foster Wheeler Corp. The insurers argued

that Foster Wheeler was a necessary party to the suit, and they moved for an order joining Foster Wheeler under rule 19. Appraising everyone's positions, the court found that Forty–Eight and Foster Wheeler were common claimants to the defendants' limited insurance fund. Foster Wheeler, however, refused to concede that payments made to Forty–Eight would reduce the amount that it, Foster Wheeler, could recover. According to the court, Foster Wheeler's position made rule 19(a)(2)(ii) joinder appropriate:

> In this action Forty–Eight seeks a determination that the insurers owe it coverage for asbestos-related claims. If Foster Wheeler is not joined, however, the insurers could be held liable for coverage to Forty–Eight without receiving a determination as to whether payments to or on behalf of Forty–Eight reduce their liability to Foster Wheeler. Foster Wheeler could then bring suit on these same policies, and a different court could determine that the insurers owe coverage to Foster Wheeler and that payments made on behalf of Forty–Eight did not reduce the insurers' liability to Foster Wheeler.

109 B.R. at 319.

Two facts distinguish the cases on appeal from *Forty–Eight Insulations*, and each suffices to make the insurers' risk of inconsistent obligations less than substantial. First, *Western Maryland* and *Chesapeake & Ohio* are pending before the same district judge, and he has treated the cases consistently, by delimiting the scope of the occupational disease clauses the same way in both suits. Assuming, therefore, that the aggregate limits do apply to the FELA claims—a point that the plaintiffs vigorously contest, and one on which we express no opinion—the district judge can guarantee in both cases that the insurers' total obligations extend only to the aggregate limits. Under the district court's interpreta-

---

**6.** We review determinations under rule 19(a)(2)(ii) de novo. *See Aguilar v. Los Angeles County,* 751 F.2d 1089, 1092 (9th Cir.) (de novo review of rule 19(a)(2)(i) determination), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); *cf. Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 634 n. 10 (1st Cir.1989) (leaving open "whether Rule 19(a) determinations by the district court are reviewable de novo or only for abuse of discretion").

tion, the insurers should have to pay the railroads only the total amount provided for by the policies, no matter how many asbestosis claims have been filed. *Cf.* 716 F.Supp. at 33 ("[T]he Court recognizes that both actions are in front of the same court, and that the Court is thus in a position to try to fashion relief in one suit so as not to unduly prejudice the parties in the other."). Second, the plaintiffs concede that if the occupational disease clauses do apply, their own recovery will stop at the aggregate limits. *See, e.g.,* Brief of Appellants at 16, 20–21; Appellants' Reply Brief at 2–3; Transcript of Oral Argument at 8–9, 10, 13. We take that representation to estop them from maintaining a different position on remand. *See Farmland Indus. v. Grain Bd. of Iraq,* 904 F.2d 732, 739 (D.C.Cir. 1990).

We turn finally to the insurers' argument that the railroads improperly fabricated federal jurisdiction.[7] The insurers argued in their motions to dismiss—and the railroads acknowledged at oral argument, *see* Transcript of Oral Argument at 5–6—that the railroads filed separate actions in order to preserve diversity and get into federal court. That tactic also bothered the district court: "the Court is troubled by the manner in which the claims have been divided in these actions, which appears to have been done solely for the purpose of obtaining diversity jurisdiction." *Chesapeake & Ohio,* 716 F.Supp. at 33; *see also id.* ("[W]hat is so troubling about the present posture of these actions [is] the extent to which the interests of the parties are intertwined."). We realize that burgeoning dockets are burdening federal courts. Yet Congress has so far proscribed only collusive joinder meant to invoke federal jurisdiction, *see* 28 U.S.C. § 1359; parties may still obtain a federal forum by colluding not to join. The insurers have cited no statute or precedent suggesting otherwise. On remand, however,

the district court can employ the flexible procedures afforded by the Federal Rules, *e.g.,* Fed.R.Civ.P. 42(a), to minimize any potential costs prompted by the continued existence of separate actions.

\* \* \* \* \* \*

We reverse the decisions of the district court and remand these actions for proceedings consistent with this opinion.

*It is so ordered.*

---

7. The insurers also argued that the Chesapeake and Ohio Railway has its principal place of business in Ohio, not Maryland, and that the Chesapeake and Ohio is not diverse from all of the defendants in the *Chesapeake & Ohio* lawsuit. Although the district court refused to resolve this issue, *see* 716 F.Supp. at 34 n. 14, the insurers have resurrected it on appeal. We decline to find the necessary facts ourselves, and leave that task for the court on remand, should the insurers raise the argument again.