**ALCOLAC INC.**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY and Canadian Universal Insurance Company, Limited.**

Civ. No. S 84–4154.

United States District Court,
D. Maryland.

July 21, 1989.

H. Gregory Skidmore, Cumberland, Md., Peter F. Axelrad, and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for plaintiff.

William F. Ryan, Jr. and Whiteford, Taylor & Preston, Baltimore, Maryland, for defendant St. Paul Fire and Marine Ins. Co.

Charles Martinez, Eccleston and Wolf, Baltimore, Md., and Lawrence A. Levy, M. Paul Gorfinkel, William M. Savino, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendant Canadian Universal Ins. Ltd.

## MEMORANDUM.

SMALKIN, District Judge.

This declaratory judgment action was instituted in 1984 to secure a determination of whether certain claims for damages asserted in litigation in the state courts of Missouri were covered by the insurance policies issued by the defendants. This case was stayed pending the outcome of the Missouri litigation. That litigation now is concluded, for purposes relevant to the present action. The jury there awarded substantial compensatory and punitive damages against Alcolac, stemming from its operation of a chemical plant in Sedalia, Missouri. Although the present parties have a dispute, which will be addressed below, as to the collateral estoppel effect of the Missouri verdict and judgment, it is incontrovertible that the jury found that Alcolac's conduct in operating the plant over a period of years polluted the nearby environment to such an extent that it made the Missouri plaintiffs ill from systemic chemical intoxication. The evidence before the jury, as well as its verdict, is set forth in, and illuminated by, the over 200–page opinion of the Missouri appellate court reported as *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo.App.1988), *petition for cert. filed*, 57 U.S.L.W. 3828 (U.S. June 8, 1989) (No. 88–1992).

After the stay imposed by Judge Young when this case was assigned to him was lifted by the undersigned (on having been informed that the Missouri litigation had been concluded), the defendants moved for summary judgment. The plaintiff has strenuously argued repeatedly to this Court, in letters and in its oppositions to the pending summary judgment motions, that it has not had sufficient opportunity to conduct discovery, and therefore cannot properly answer the motions on the merits. Although the Court recognizes that both Fed.R.Civ.P. 56(f) and the opinion of the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), embody the principle

that a party may not be made to answer a summary judgment motion before a fair opportunity for discovery of relevant facts has been afforded, the need for discovery must be assessed in the context of the particular case at hand. In this case, there is certainly no need for discovery as to what happened either at the Sedalia plant or in the Missouri litigation. The only matters as to which discovery might be pertinent at all are matters involving the policies themselves. Accepting the plaintiff's protestations that it did not have copies of the insurance policies, the Court directed the defendants to furnish the plaintiff with copies of the policies, which have been furnished, and the Court perceives now no issue on which discovery need be taken. If there were, for example, issues of fact as to policy language interpretation that required extrinsic evidence to be considered, discovery might be appropriate. There are, however, no such issues raised by the instant motions, as analyzed below, because the Court's decision turns on policy language defining "occurrence" that is, beyond any doubt, present in the policies and as to which there is no material factual dispute. The motions have been fully and ably briefed, and no oral argument is deemed necessary. Local Rule 105.6, D.Md.

■ The first substantive question is the extent to which, for purposes of this litigation, the issues bearing on insurance coverage were settled by the outcome of the Missouri litigation. It is well-recognized, both in Missouri and elsewhere, that the underlying litigation may properly be afforded a collateral estoppel effect in subsequent coverage litigation between an insured and its insurer. *Bresnahan v. May Department Stores Co.*, 726 S.W.2d 327, 329–30 (Mo.1987) (en banc); *Steyer v. Westvaco Corp.*, 450 F.Supp. 384, 397 (D.Md. 1978). Alcolac claims that this Court cannot discern, from the jury's verdict and the appellate opinion in *Elam*, whether the facts pertinent to coverage were resolved against the insured so as to estop it collat-

erally in this forum. Alcolac contends that this Court must conduct a *de novo* review of the 10,000 pages of transcript in *Elam*, all of the pleadings filed therein, and all of the exhibits submitted in evidence there, as well as those exhibits excluded from evidence, in order to determine the coverage questions.

This Court disagrees with Alcolac's contention as to the effect of the outcome of the underlying litigation. The only pertinent questions in this lawsuit are whether the polluting acts were covered occurrences under the policies and whether the pollution exclusions in both the St. Paul and Canadian Universal policies * were effective to exclude coverage for the acts which gave rise to Alcolac's liability to the *Elam* plaintiffs. These determinations turn, respectively, upon whether the acts proved in *Elam* were covered occurrences, *i.e.*, accidents neither expected nor intended from the standpoint of the insured, and whether they were "sudden and accidental." These determinations surely can be made on the record of *Elam*. See *American Motorists Insurance Co. v. General Host Corp.*, 667 F.Supp. 1423, 1427–30 (D.Kan.1987) (suggestion that record in underlying case was insufficient to resolve coverage dispute was "nonsensical").

■ No reasonable fact-finder could consider the *Elam* jury's verdict, in light of the evidence that was before it as discussed in the *Elam* opinion, and arrive at a conclusion other than that the acts in question were neither occurrences as defined in the policies, nor "sudden and accidental" within the pollution exclusion. The damages awarded to the *Elam* plaintiffs were to compensate them for their repeated exposure—from Alcolac's conduct—to highly toxic substances, to the point where they had developed chemical poisoning of their systems. Despite the heroic attempts of Alcolac's *Elam* trial counsel, by his affidavits filed in this case, to put a favorable "spin" on testimony and other evidence

---

* The absolute pollution exclusion inserted for one year in a Canadian Universal policy will be     addressed separately.

that was presented in the *Elam* case, there can be no genuine dispute that the operation of the Sedalia plant resulted in repeated contaminations of the environment that were neither sudden nor accidental in the insurance sense, *see Reliance Insurance Co. v. Mogavero,* 640 F.Supp. 84, 86 (D.Md.1986), but were the result of Alcolac's gross failure to operate the plant in an environmentally responsible fashion, the consequences of which were either expected or intended by the insured. The jury's award of substantial punitive damages is crucially indicative of the nature of Alcolac's conduct. Whether the punitive award was premised upon Alcolac's complete indifference to, or conscious disregard for, the safety of others, the fact that the award was made makes it clear that the systemic chemical intoxication of the plaintiffs—which is what Alcolac now seeks to have indemnified by its insurers—was not the result of covered occurrences or the "sudden and accidental" escapes of pollutants. Indeed, under Missouri law, the award of punitive damages means that Alcolac knew that its conduct "was attended by a 'high degree of probability that the action would result in injury.'" *Elam,* 765 S.W.2d at 226 (quoting *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 436 (Mo.1985) (en banc)). Thus, the injuries to the *Elam* plaintiffs were not unexpected. The record in *Elam* depicts a situation where continuing acts of pollution occurred, where management's efforts to deal with the problem either amounted to conscious disregard or deliberate indifference, and where the effects were long-term. The plaintiffs' damages—chemical poisoning of their bodies—did not arise from events or occurrences that were both unexpected and unintended by the insured.

The relevant policy terms, which are not ambiguous at all, are to be given their usual, common-sense meaning. *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.,* 302 Md. 383, 388, 488 A.2d 486, 488 (1983). The better-reasoned authority is to the effect that, when pollutants regularly have escaped over a period of years, especially when management was either deliberately indifferent to the situation or consciously disregarded it, coverage is excluded under the policy definition of "occurrence," because damage is to be expected with a substantial degree of probability, *see, e.g., New Castle County v. Hartford Accident & Indemnity Co.,* 685 F.Supp. 1321, 1330 (D.Del.1988). The better-reasoned authority construing the "sudden and accidental" language of the pollution exclusion reaches a similar result. *See, e.g., United States Fidelity & Guaranty Co. v. Star Fire Coals, Inc.,* 856 F.2d 31, 34–35 (6th Cir.1988). *See also,* on both points, the many cases collected in defendant St. Paul's memorandum in support of its motion for summary judgment at 28 n. 26, and those appended to defendant Canadian Universal's summary judgment reply brief. Cases such as *Mraz v. Canadian Universal Insurance Co.,* 804 F.2d 1325 (4th Cir.1986), and *Steyer,* 450 F.Supp. 384, are not apt. Those cases simply illustrate that pollution coverage under an occurrence policy may be found for long-term, unintentional pollution, which might not be promptly discoverable or which might be the result of a series of unexpected, unintended occurrences. Those cases did not address the situation of a polluter whose conduct over a period of years produced a result so expectable as to justify an award of punitive damages. *See Star Fire Coals,* 856 F.2d at 33 (defining "occurrence" as relating to "damage that was unexpected," regardless of duration of precipitating event). *See also Mraz v. American Universal Insurance Co.,* 616 F.Supp. 1173, 1178 (D.Md.1985), *rev'd on other grounds,* 804 F.2d 1325 (4th Cir.1986) (focus in "occurrence" inquiry is on the expectability of damage resulting from insured's conduct); *Farm Bureau Town & Country Insurance Co. of Missouri v. Turnbo,* 740 S.W.2d 232, 235–36 (Mo.App.1987) (occurrence terms "expected" and "intended" are neither ambiguous nor synonymous).

The jury's award of punitive damages in *Elam,* as interpreted by the Missouri courts, shows a consciousness of wrongdoing on Alcolac's part that renders the consequences of that conduct "expected" with-

in the common meaning of that term. *See Elam*, 765 S.W.2d at 226. *See also Turnbo*, 740 S.W.2d at 234–36; *Hoover's Dairy*, 700 S.W.2d at 436; *Diamond Shamrock Chemicals Co. v. Aetna Casualty & Surety Co.*, No. C–3939–84, slip op. at 34 (N.J. Super. Apr. 12, 1989) (St. Paul's Motion for Summary Judgment, Case App., Exh. 3).

Of necessity, the preceding analysis answered two questions, the first whether the present record is sufficient to determine the question of coverage under the exclusion, and the second whether the policy definition of "occurrence" and/or the pollution exclusions deny coverage for the events in question. Because the definitional language and the exclusions in the Canadian Universal policies with qualified exclusions and those in the St. Paul policies are identical, the Court concludes that none of the policies in question covers the *Elam* losses, and that the defendants therefore are entitled to summary judgment. There are various issues, however, both general and peculiar to the various policies, that, though not outcome-determinative, should be addressed in the interest of completeness.

■ The first such question is the scope, effect, and validity of the absolute pollution exclusion for the year 1980–81 in the Canadian Universal policy. For reasons adequately set forth in this Court's opinion in related litigation, *Alcolac Inc. v. California Union Insurance Co.*, 716 F.Supp. 1546, issued this date, the Court holds that the absolute pollution exclusion in the Canadian Universal policy for the year 1980–81 is valid and enforceable, and that it completely excludes coverage by Canadian Universal for that year.

■ The next question, which is common to all the policies, is whether punitive damages may be recovered. The insurers claim that Missouri case law prohibits insurance coverage for punitive damages. The parties seem to agree that under Maryland's usual choice of law rule—*lex loci contractus*—Maryland law governs issues concerning the validity and construction of the policies, but Missouri law governs issues concerning the performance under the policies. The parties differ on whether coverage for punitive damages is a validity issue or a performance issue. In this Court's opinion, the question of whether punitive damages may be recovered, as a matter of public policy, is a question relating to the validity and scope of coverage of the contract, not to its performance. Therefore, the Maryland choice of law rule that this Court must follow, *see Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), would look to the substantive law of Maryland to determine whether a contract of insurance extends to awards of punitive damages, wherever the damages occurred, as within the policy's coverage. Although the case is not on point, the adherence by the Court of Appeals of Maryland to strict rules of *lex loci contractus* in *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 535 A.2d 466 (1988), leads this Court to believe that the Maryland courts would not enforce the public policy of Missouri against indemnifying for punitive damage awards in a *lex loci contractus* analysis of the policies here in question. Therefore, the Court holds that the policies cover punitive damage awards, if the losses in general are covered, which this Court holds they are not.

The final issue is whether the St. Paul policy contained a provision waiving the pollution exclusion. The relevant language stated that the waiver of the pollution exclusion was "applicable in the states of Maryland, New Hampshire, North Carolina, and Vermont." The question is whether the words "applicable in" refer to the place of issuance of the policy, which was undoubtedly Maryland, or to the place where the acts of pollution occurred. Although Maryland law does not encourage a court to comb a policy for ambiguity, it does require that, once ambiguity is found, it be treated as a question of fact and that the fact-finder should resolve the ambiguity against the insurer. *See, e.g., Government Employees Insurance Co. v. DeJames*, 256 Md. 717, 720, 261 A.2d 747, 749 (1970). It would appear to the Court that the policy language is ambiguous. Be-

cause, however, the losses in question are not covered as "occurrences," the Court need not resolve this issue.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum, IT IS, this 21st day of July, 1988, by the Court, ORDERED and AD-JUDGED:

1. That defendants' motions for summary judgment BE, and the same hereby ARE, GRANTED;

2. That judgment BE, and the same hereby IS, entered in favor of both defendants, against the plaintiff.