The CHESAPEAKE & OHIO RAILWAY COMPANY, et al., Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, and London MAR-KET INSURANCE COMPANIES, et al., Defendants.

WESTERN MARYLAND RAILROAD COMPANY, Plaintiff,

v.

HARBOR INSURANCE COMPANY, et al., Defendants.

Civ. A. Nos. 85–3162 SSH and 85–3163 SSH.

United States District Court, District of Columbia.

Aug. 30, 1993.

Jerold Oshinsky, Robert H. Shulman, Sherry W. Gilbert, Anderson, Kill, Olick & Oshinsky, Washington, DC, for plaintiff(s).

Richard H. Gimer, Stephen L. Humphrey, Richard A. Ifft, Lisa B. Lapinski, Hopkins & Sutter, Washington, DC, for Falcon Ins. Co. (successor to Employers Surplus).

James W. Greene, Bromley, Greene & Walsh, Washington, DC, for American Re-Insurance American Cas. Co. of Reading Continental Cas. Co.

Robert E. Heggestad, Mark S. Weiss, Heggestad & Weiss, Washington, DC, for Pacific Ins. Co.

## OPINION

STANLEY S. HARRIS, District Judge.

On October 9, 1985, plaintiffs filed this declaratory judgment action against a large number of liability insurers.[1] Plaintiffs seek a declaration as to the various insurers' defense and indemnity obligations for asbestos-related claims brought against plaintiffs by present and former employees under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51-60.[2]

As of this date, the claims against most of the original defendants have been settled and dismissed with prejudice. The remaining defendants are Falcon Insurance Company (as successor to Employers Surplus Lines Insurance Company) ("Employers Surplus"), American Re-Insurance Company ("American Re"), American Casualty Company of Reading ("American Casualty"), Continental Casualty Company ("Continental Casualty"), and Pacific Insurance Company ("Pacific").

Presently before the Court are various motions for partial summary judgment brought by the remaining defendants—including motions concerning the timeliness of notice of occurrence, the duty to defend, the applicable trigger of coverage, the number of "per occurrence" limits in multi-year policies, and the meaning of certain exclusionary clauses.[3] Also before the Court are plaintiffs' motions for summary judgment on certain of defendants' affirmative defenses. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Although "findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its analysis, in part because the case survives the rulings herein. See Fed.R.Civ.P. 52(a).

1. Plaintiffs are Chesapeake & Ohio Railway Company ("C & O"), Baltimore & Ohio Railway Company ("B & O"), Western Maryland Railway Company ("Western Maryland"), and the Seaboard System Railroad Incorporated ("Seaboard"). Each is a subsidiary of CSX Transportation, Inc. ("CSXT").

2. This case was originally filed as two separate actions. One action was brought by plaintiffs C & O, B & O, and Seaboard, the other was brought by plaintiff Western Maryland. On May 25, 1989, this Court dismissed both actions, finding an absence of an indispensable party (in effect concluding that diversity jurisdiction in this court thereby had been created artificially). *Chesapeake & Ohio Ry. Co. v. Certain Underwriters at Lloyd's, London,* 716 F.Supp. 27, 34 (D.D.C.1989). On August 3, 1990, the Court of Appeals reversed the order of dismissal and remanded to this court for further proceedings. *Western Md. R.R. Co. v. Harbor Ins. Co.,* 910 F.2d 960 (D.C.Cir.1990). The Court consolidated the two cases on May 1, 1991.

3. Although the Court recognizes that the resolution of some motions might make certain other pending motions moot, it nevertheless rules on all of the pending motions.

## Discussion

### Late Notice of Occurrence to Employers Surplus

Employers Surplus moves for summary judgment based on plaintiffs' failure to provide timely notice of occurrence. Employers Surplus argues that plaintiffs' late notice of occurrence constituted a breach of the applicable insurance contracts and relieved it of any indemnification obligation due to plaintiffs.[4] The Court agrees.

It is undisputed that compliance with the policy requirement of timely notice is a condition precedent to coverage. *See, e.g., Norfolk & W. Ry. Co. v. Accident & Casualty Ins. Co.*, 796 F.Supp. 925, 928 (W.D.Va. 1992).[5] The language of the notice of occurrence provisions in the applicable insurance policies differ slightly, but not materially. *See* Employers Surplus's Statement of Material Facts at ¶¶ 14–15.[6] Courts consistently interpret this language to mean that an insured's duty to give notice of occurrence to an excess carrier accrues when, viewed objectively, the facts and circumstances known to the insured would have suggested to a reasonable person the possibility of a claim likely to trigger the excess insurer's coverage. *See, e.g., Greyhound Corp. v. Excess*

*Ins. Co.*, 233 F.2d 630, 635 (5th Cir.1956); *Olin Corp. v. Ins. Co. of N. Am.*, 743 F.Supp. -1044, 1053 (S.D.N.Y.1990), *aff'd*, 929 F.2d 62 (2d Cir.1991); *Dan River, Inc. v. Commercial Union Ins. Co.*, 227 Va. 485, 317 S.E.2d 485, 487 (1984) (interpreting provision that triggered notice "[w]hen an occurrence takes place which, in the opinion of the insured, involves or may involve liability on the part of the company" to require notification "whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved").[7]

Whether notice is timely may be decided as a matter of law where the facts are undisputed. *See, e.g., Norfolk & W. Ry. Co.*, 796 F.Supp. at 928. The Court finds that here, notice was untimely as a matter of law. Plaintiffs' employees began to file asbestos-related FELA suits seeking damage amounts in excess of Employers Surplus's policy triggers in 1979. The damage requests in these suits, in conjunction with available information about the hazards of asbestos and the presence of asbestos in plaintiffs' operations, would have suggested to a reasonable person the likelihood of liability that might implicate the Employers Surplus excess policies.[8] *See Atlanta Int'l Ins.*

---

4. Employers Surplus participated as an insurer under various policies of insurance issued between 1960 and 1971 to C & O. Some of these policies also insured B & O. Employers Surplus also participated as an insurer under various policies of insurance issued to the four predecessors of Seaboard between 1960 and 1972. *See* Employers Surplus's Statement of Material Facts at ¶ 2.

5. As discussed *infra*, the Court applies Virginia law to this issue. However, the other potentially applicable states agree that timely notice is a condition precedent to coverage. *See, e.g., H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*, 334 So.2d 573, 577 (Fla.1976); *Reserve Ins. Co. v. Richards*, 577 S.W.2d 417, 419 (Ky.1978), *overruled on other grounds, Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798 (Ky.1991); *Liberty Sav. Bank, F.S.B. v. Lawyers Title Ins. Corp.*, No. 89–12–174, 1990 WL 235470, at *4, 1990 Ohio App. LEXIS 5845, at *7 (Dec. 31, 1990).

6. Each requires that the insured give notice of an occurrence that will "likely" or "probably" result in a claim. *Id.* The notice provision in Policy No. S–55039, issued to Seaboard for the period August 1, 1960, to August 1, 1961, states that the insured shall give prompt notice to the insurer of

an accident "which in the judgment of the railway is a claim hereunder." *Id.*

7. *See also Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla.Ct.App.1981) (notice required "when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise"); *Aetna Casualty & Sur. Co. v. Martin*, 377 S.W.2d 583, 585 (Ky.1963) (provision requiring insured to "immediately forward" notice to insurer interpreted to mean "within a reasonable time"), *overruled on other grounds, Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798 (Ky.1991); *McCann v. Nationwide Mut. Fire Ins. Co.*, 88–CA–4433, 1989 WL 52635, at *4, 1989 Ohio App. LEXIS 1774, at *9 (May 17, 1989) (test "not what the insured believed but what facts would lead a reasonable person to believe that coverage exists").

8. Plaintiffs contend that there is a factual dispute regarding their level of knowledge between 1920 and 1984 about the hazards of asbestos arising from their operations. The Court finds that this dispute is not material. Viewing the facts in the light most favorable to plaintiffs, the Court finds that it reasonably should have appeared to plain-

*Co. v. Yellow Cab Co., Inc.,* 962 F.2d 657, 659 (7th Cir.1992) (finding that *ad damnum* requesting damages in excess of primary coverage made notice to excess insurer necessary).[9] Plaintiffs notified Employers Surplus of the asbestos-related bodily injury claims filed against CSXT in November, 1984. *See* Plaintiffs' Statement of Material Facts at ¶ 20. Therefore, the Court finds that plaintiffs' notice, which was given more than five years after the first claims were filed, was untimely as a matter of law.[10]

■■■ Plaintiffs claim, however, that even if their notice was untimely, Employers Surplus must still indemnify them unless it can show that it was prejudiced by the late notice. A conflict exists among the laws of the potentially interested states regarding the issue of prejudice to the insurer as a component of the late notice defense.[11] Although numerous policies are at issue here, different states' laws on a particular question of law should not be applied to different insurance policies in a single action. *See Carey Canada, Inc. v. Aetna Casualty & Sur. Co.,* Nos. 84–3113, 85–1640, 1988 U.S.Dist. LEXIS 8997, at *11 (March 30, 1988) (*quoting Independent Petrochem. Corp. v. Aetna Casualty*

*and Sur. Co.,* 654 F.Supp. 1334, 1356 (D.D.C. 1986) (application of various state laws to various insurance contracts would be "confusing, burdensome, [and] unfair to plaintiffs if it creates significant gaps in coverage")). Therefore, the Court must choose among the applicable laws. Employers Surplus asserts that the Court should apply Virginia law because Virginia is the only state through which all of the railroads insured by Employers Surplus operated their lines during the terms of the applicable policies. The Court adopts this choice of law analysis and applies Virginia law to this issue.[12] Virginia does not require an affirmative showing of prejudice due to late notice. *See, e.g., Norfolk & W. Ry. Co.,* 796 F.Supp. at 927; *State Farm Fire & Casualty Co. v. Scott,* 236 Va. 116, 372 S.E.2d 383, 385 (1988). Accordingly, Employers Surplus's motion for summary judgment on the issue of late notice is granted.

### Employers Surplus's Duty To Defend

■ Employers Surplus also moves for partial summary judgment on the issue of its duty to defend under nineteen policies issued to plaintiffs. It asserts that the unambigu-

tiffs in 1979 that the excess policies might be implicated, given then existing information about the hazards of asbestos in general, and given the damage demands of the FELA claimants.

9. Plaintiffs contend that notice was timely because, through the end of 1984, their actual claims experience revealed that the underlying asbestos claims were not likely to involve the Employers Surplus policies. *See Norfolk & W. Ry. Co.,* 796 F.Supp. at 928–29. The Court declines to follow the approach adopted in *Norfolk & Western.* That approach is contrary to the overwhelming weight of authority, which, as discussed *infra,* favors an objective determination of when the notice obligation accrues.

10. The Court finds plaintiffs' arguments that Employers Surplus had "actual notice" of occurrence and that Employers Surplus waived its right to enforce the notice obligations meritless.

11. The parties agree that the laws of the originally-named railroads' principal places of business—Florida, Kentucky, Ohio, and Virginia— are potentially applicable to this action. *See* Plaintiffs' Memorandum Regarding "Trigger of Coverage" at 14; Employers Surplus's Memorandum Regarding "Late Notice" at 10. Plaintiffs also assert that Maryland law may be appli-

cable, because Maryland was B & O's principal place of business. *See* Plaintiffs' Memorandum Regarding "Trigger of Coverage" at 14. Because Employers Surplus did not insure B & O until after it became a subsidiary of C & O in 1964, the Court finds that Maryland law is not applicable to this issue.

12. Plaintiffs have expressly chosen not to brief this issue, contending that the conflict among the applicable states is false, or, alternatively, that the choice of law issue requires separate analysis and briefing. It is clear that there is a conflict between the laws of the potentially applicable states. Neither Virginia nor Kentucky law contains a prejudice component. *See, e.g., Reserve Ins. Co.,* 577 S.W.2d at 419; *State Farm,* 372 S.E.2d at 385. Florida and Ohio place the burden on the insured to overcome a rebuttable presumption of prejudice upon a showing of late notice. *See, e.g., Bankers Ins. Co. v. Macias,* 475 So.2d 1216, 1217 (Fla.1985); *Ohio Casualty Ins. Co. v. Joseph Sylvester Constr. Co.,* No. 90–T– 4439, 1991 WL 206628, at *6, 1991 Ohio App. LEXIS 4629, at *17 (Sept. 30, 1991). Despite this obvious conflict, plaintiffs did not brief this issue or provide a detailed explanation as to why they elected not to. Accordingly, the Court also finds that plaintiffs have waived their opportunity to brief the applicable choice of law with respect to this motion.

ous terms of these policies provide that Employers Surplus's consent to incur defense costs is a predicate to coverage. It is undisputed that Employers Surplus has never been asked to incur plaintiffs' defense costs, and has never agreed to incur such costs or to participate in the defense of the underlying claims. Therefore, Employers Surplus contends that it has no duty to defend. The Court agrees.

Four types of policies are at issue. The first group of policies contains language that is the practical equivalent of language that this Court already has interpreted. The Court found that this language excludes an insurer's obligation to pay the cost of investigating and litigating claims, unless the insurer elects to participate in the settlement or defense of such claims. *See Chesapeake & Ohio Ry. Co. v. Certain Underwriters at Lloyd's London,* Nos. 85–3162, 85–3163, slip op. at 5 (D.D.C. Oct. 16, 1991).[13] It is undisputed that Employers Surplus has not elected to participate in the settlement or defense of the underlying claims. Therefore, Employers Surplus has no duty to pay defense costs under this group of policies.

The other three groups of policies provide, in various language, that no legal costs or expenses shall be incurred without the consent of the insurer.[14] Under the plain and unambiguous language of these provisions, the duty to defend is conditioned on Employers Surplus's giving consent. *See, e.g., Botany Bay Marina, Inc. v. Great Am. Ins. Co.,* 760 F.Supp. 88, 91 (D.S.C.1991); *Healy Tib-*

*bitts Constr. Co. v. Foremost Ins. Co.,* 482 F.Supp. 830 (N.D.Cal.1979); *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.,* 716 S.W.2d 348 (Mo.App.1986). Because it is undisputed that Employers Surplus did not give such consent, it is under no obligation to incur defense costs.[15] Accordingly, Employers Surplus's motion for partial summary judgment on the duty to defend is granted.

*Trigger of Coverage*

■ Employers Surplus moves for partial summary judgment concerning the trigger of coverage applicable to the asbestos-related claims brought against plaintiffs by their employees pursuant to the FELA, 45 U.S.C. § 51–60 (1988). Employers Surplus argues that the "last injurious exposure" rule of both federal and state workmen's compensation cases is the applicable trigger of coverage. Under this rule:

> [T]he carrier who last insured the "liable" employer during the claimant's tenure of employment, prior to the date the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be held responsible for the discharge of the duties and obligations of the "liable" employer.

*Travelers Ins. Co. v. Cardillo,* 225 F.2d 137, 145 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955).

The Court disagrees that this is the applicable law. "An insurance suit does not arise

---

**13.** Employers Surplus Policy Nos. S–67–00234, S–67–00206, S–67–00182, and S–67–00160 all contain this provision. *See* Employers Surplus's Statement of Material Facts at ¶ 1.

**14.** Employers Surplus Policy Nos. S–97–00227, S–67–00284, S–67–00246, and S–67–00164 define "Ultimate Net Loss" as "sums actually borne by the assured ... as well as all legal expenses incurred with the written consent of Underwriters." Employers Surplus's Statement of Material Facts at ¶ 2. Employers Surplus Policy Nos. S–67–00271, S–67–00235, S–67–00213, SP–1037, SP–1038, and US–57376 state that in the event of an occurrence, "no law costs shall be incurred without the consent of the Underwriters hereon." *Id.* at ¶ 3. Employers Surplus Policy Nos. S–10536, S–11103, S–67–00020, and S–67–00068 provide:

> The word "costs" as used herein shall mean adjustments, investigation and legal expenses

... incurred with the written consent of the Underwriters.

> \*　　\*　　\*　　\*　　\*　　\*

No "Costs" shall be incurred on the Underwriters' behalf in respect of claims to which the Underwriters are or may become liable to contribute without their consent in writing being first obtained....

*Id.* at ¶ 4.

**15.** Plaintiffs argue that because Employers Surplus wrongfully denied coverage, it has waived its right to require consent before litigation costs were incurred. *See Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577 (5th Cir. 1986). *Coastal Iron Works* is inapposite because it involved a primary insurer with a general duty to defend.

under the law that creates the insured's liability; rather, such a suit arises under the law that creates the insured's cause of action. In this case, that law is state law." *Hudson Ins. Co. v. American Elec. Corp.*, 957 F.2d 826, 828 n. 1 (11th Cir.), *cert. denied,* — .U.S. ——, 113 S.Ct. 411, 121 L.Ed.2d 336 (1992); *see also Reading Co. v. Travelers Indem. Co.*, No. 87–2021, 1988 WL 13242, at *2, 1988 U.S.Dist. LEXIS 1408, at *5 (E.D.Pa. Feb. 18, 1988). Moreover, the Court finds it inappropriate to use worker's compensation precedent as guidance. The rationales underlying the trigger of coverage rule for worker's compensation law, a no-fault regime, are not applicable in the negligence-based FELA context. *Cf. Urie v. Thompson*, 337 U.S. 163, 183, 69 S.Ct. 1018, 1031, 93 L.Ed. 1282 (1949) ("[v]iewing the Federal Employers' Liability Act as a negligence statute, we think that the arguments drawn from the coverage accorded ... in state workmen's compensation statutes cannot control the present inquiry"); *Insurance Co. of N. Am. v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1221 (6th Cir.1980) ("because all that is required to establish workers compensation liability is a work-related injury, administrative considerations are of greater significance in workers compensation cases than in liability insurance cases"). Therefore, the Court finds that the "last injurious exposure" rule is not the applicable trigger of coverage, and denies Employers Surplus's motion for partial summary judgment on this issue.[16]

### Cessation from Work

■ Employers Surplus, American Re, Continental Casualty, and American Casualty move for partial summary judgment concerning the meaning of the "cessation from work" clause contained in several of their policies.[17] This clause provides:

> This policy shall only indemnify the [insured] against its liability to pay compensation for occupational disease in cases where the employee's cessation from work as a result thereof first occurs during the period of insurance covered by this policy.

*See, e.g.,* American Re's Statement of Material Facts at ¶ 2.

Defendants assert that this clause clearly and unambiguously provides coverage for occupational disease claims only when an employee first ceases work due to an occupational disease during the policy period. The Court agrees that the language of this provision is plain and unambiguous. *See Norfolk & W. Ry. Co.*, 796 F.Supp. at 935–36.[18] Accordingly, the Court grants defendants' motions for partial summary judgment on this issue.

### *"Per Occurrence" Limit in Multi–Year Policies*

■ American Re and Employers Surplus move for partial summary judgment concerning the "per occurrence" limit contained in their multi-year policies. They assert that under the policies at issue, the "per occurrence" limit applies only once for each occurrence during the multi-year period, and not once per year. The Court agrees.

During the period in question, American Re issued fifteen excess multi-year policies to plaintiffs that contain limits of liability appli-

---

16. Plaintiffs argue that the Court should apply the "continuous trigger" of coverage rule to this matter. The Court declines to determine the applicable trigger of coverage absent further briefing by all of the parties that remain in this action.

17. The policies at issue are: Employers Surplus Policy Nos. S–67–00068, S–67–00020, S–11103, S–55039, and S–10536; American Re Policy Nos. 5362–04, 5362–05, 5705–01, 5705–02, 5705–03, 5705–001, M5705–0002, M5705–0003, and 9103–0001; American Casualty Policy Nos. 19–50–117, 34–50–119, 34–50–140, 34–50–141, 34–60–119, 34–61–119, 34–61–140, 34–61–141, 34–62–119, 34–62–146, 34–62–141, 34–63–119, 34–63–140, and 34–63–227; and Continental Casualty Policy

Nos. RD9972481, RD9975616, RD9977777, RD9977834, and RD9433132.

18. Plaintiffs argue that the "cessation from work" clause is ambiguous because it "applies at most to strict liability occupational disease claims, brought under workers' compensation statutes, which have no application to negligence claims brought under" the FELA. *See* Plaintiffs' Opp. at 2. The Court disagrees. The Court already has determined that the FELA encompasses occupational disease. *See Chesapeake & Ohio Ry. Co.*, 716 F.Supp. at 31–32. Moreover, plaintiffs' contention that the policies at issue classify FELA claims as a separate category apart from occupational disease claims is meritless.

cable on a per occurrence basis.[19] Employers Surplus issued five such policies.[20] Although the exact language used in the policies differs slightly, they set forth liability limits for a series of accidents arising out of "one occurrence," or limits for "each occurrence." *See* American Re's Statement of Material Facts at ¶¶ 2–5; Employers Surplus's Statement of Material Facts at ¶¶ 2–3. Thus the plain and unambiguous language of each establishes that only one per occurrence limit is available for any single occurrence during the policy period. *See, e.g., Air Products and Chem., Inc. v. Hartford Accident and Indem. Co.,* No. 86–7501, 1989 WL 73656, at *1, 1989 U.S.Dist. LEXIS, *3 (E.D.Pa. June 30, 1989) *Uniroyal, Inc. v. Home Ins. Co.,* 707 F.Supp. 1368, 1393 (E.D.N.Y.1988); *Diamond Shamrock Chem. Co. v. Aetna Casualty & Sur. Co.,* 258 N.J.Super. 167, 609 A.2d 440, 468 (App.Div. 1992).[21] Accordingly, the Court grants the motions of Employers Surplus and American Re on this issue.

### Employee Exclusion from Coverage

■ American Re moves for partial summary judgment with respect to several policies that, it argues, do not provide coverage to employees who sustain injury or occupational disease while engaged in work for the insured.[22] The policies at issue state that American Re shall:

[I]ndemnify [the Insured] for any and all sums which they shall by law become liable to pay and shall pay or by final judgment be adjudged to pay ... to any person or persons (excluding employees whilst engaged in work for [the insured]) ....

American Re's Statement of Material Facts at ¶ 3. The Court finds that the clear and unambiguous meaning of this language is that the insurer will not cover the claims of employees who became injured or diseased while working.[23] Accordingly, the Court grants American Re's motion for partial summary judgment on this issue.

### *"Expect/Intend" Exclusion*

■ Pacific moves for partial summary judgment on the issue of whether it has any indemnification obligation due to plaintiffs. Pacific contends that because plaintiffs were aware of the hazards of asbestos exposure since the 1930's, and failed to take steps either to prevent exposure or to warn workers of asbestos-related risks until the mid–1970's, the resulting worker injuries were expected or intended, and thus there is no "occurrence" within the scope of Pacific's policies. Because the Court finds that genuine issues of material fact exist with respect to whether there is an occurrence, it denies Pacific's motion for partial summary judgment.

Pacific insured plaintiffs for the policy period July 31, 1981, to July 31, 1982, under three policies: Nos. PI000127, PI000128, and PI000129. Under the general coverage provision in each of these policies, Pacific agreed to:

Indemnify the insured for all sums which the insured shall become legally obligated to pay as damages ... because of personal injury or property damage, caused by an occurrence and arising out of operations

---

19. The policies at issue are American Re Policy Nos. 5116–0001, 5116–0002, 5116–0003, 5116–0004, 7140–0003, 7140–0004, M5705–0002, M5705–0003, M–0083650, C–0095174, C–0095185, C–0096261, C–0096272, C–0096714, and C–0716052.

20. These are Employers Surplus Policy Nos. SP–1037, SP–1038, S–67–00164, and US–57376.

21. Plaintiffs contend that the annual payment of premiums, and the annual aggregate limits on occupational disease claims in six of the American Re policies, are evidence that the multi-year contracts are the equivalent of separate one-year policies purchased generally for a multi-year period. Thus they claim that each policy implicitly contains a separate per-occurrence limit of liability for each year. The Court is unpersuaded by plaintiffs' attempt to create ambiguity where none exists.

22. The applicable policies are American Re Policy Nos. 5362–02, 5362–03, 9103–0002, 9103–0003, and 9103–0004.

23. Plaintiffs argue that this language is ambiguous because it could be construed to mean that only the claims of former, as opposed to current, employees are covered. Plaintiff's reading represents an illogical construction of the applicable language.

necessary to the conduct of the business of the named insured.

*See, e.g.,* Pacific's Ex. A at 2.1.

For purposes of this section, an "occurrence" is defined as "(A) An accident, or (B) a continuous or repeated exposure to conditions which result in personal injury or property damage which is neither expected nor intended from the standpoint of the insured." *Id.* at 4.3.

█ It is well-established that the insured has the burden of proving coverage, while the insurer has the burden of proving exceptions thereto. *See generally* 19 G. Couch, *Couch on Insurance 2d* § 79:345 (rev. ed. 1983). Because the "neither expected nor intended" portion of the occurrence definition operates to deny coverage, courts consider this portion to be an exclusion. *See, e.g., Johnstown v. Bankers Standard Ins. Co.,* 877 F.2d 1146, 1151 n. 1 (2d Cir.1989) (discussing meaning of the "'expect or intend' exclusion"); *Carter Lake v. Aetna Casualty & Sur. Co.,* 604 F.2d 1052, 1058–59 (8th Cir.1979) (defining "neither expects nor intends" as "an exclusionary clause"). Thus Pacific bears the burden of showing that plaintiffs expected or intended that the con-

tinuous or repeated exposure of their employees to asbestos would result in personal injury.

█     Under the plain language of the policies, the "expected/intended" exclusion must be judged by a subjective standard. *See, e.g., C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.,* 467 F.Supp. 17, 21 (E.D.Pa.1979) (question of fact as to whether policyholder subjectively expected property damage); *Virginia Beach v. Aetna Casualty & Sur. Co.,* 426 F.Supp. 821, 825 (E.D.Va. 1976) (standard is not what "should have been expected," but whether the injury was "unexpected from the insured's standpoint"); *In re Asbestos Ins. Coverage Cases (Phase III),* Judicial Council Coordination Proceeding, No. 1072, slip op. at 69–70 (Cal.Super.Ct. Jan. 24, 1990) (language of policy "speaks in terms of what *was* 'expected or intended,' and not in terms of what *should have been* expected or intended") (emphasis in original).[24] The Court finds that genuine issues of material fact exist with respect to whether plaintiffs subjectively expected or intended that the exposure of their employees to asbestos before 1981 would result in personal injury.[25] Accordingly, Pacific's motion for partial summary judgment is denied.

---

**24.** Pacific contends that a choice of law issue exists as to whether a subjective or objective standard should be applied. Pacific asserts that the laws of Maryland, Ohio, Pennsylvania, and Virginia are potentially applicable. Although plaintiffs have not briefed this issue, plaintiffs do not appear to dispute the potential applicability of these state laws. Pacific concedes that the laws of Ohio, Pennsylvania, and Virginia apply a subjective standard. Pacific argues, however, that Maryland utilizes an objective standard. Pacific bases its argument on a federal case, which held that:

> [t]he better reasoned authority is to the effect that, when pollutants regularly have escaped over a period of years, especially when management was either deliberately indifferent to the situation, or consciously disregarded it, coverage is excluded under the policy definition of "occurrence," because damage is to be expected with a substantial degree of probability.

*Alcolac, Inc. v. St. Paul Fire and Marine Ins. Co.,* 716 F.Supp. 1541, 1544 (D.Md.1989) (citation omitted). Pacific argues that the use of the words "to be expected," rather than "was expected," shows that the *Alcolac* court applied an objective standard. The Court finds this language inconclusive. Moreover, the *Alcolac* court

found that a punitive damage award in the underlying suit meant "that [the insured] knew that its conduct 'was attended by a high degree of probability that the action would result in injury.'" *Id.* (citations omitted). Therefore, the Court finds that Maryland has not specifically reached this issue. Accordingly, because the laws of the other potentially relevant jurisdictions are in agreement, and because the Court believes that the plain language of the policies dictates the application of a subjective test, the Court finds it unnecessary to undertake a choice of law analysis with respect to this issue.

**25.** Pacific also argues that by 1981, the asbestos injuries were a known loss to plaintiffs. Although plaintiffs clearly knew of the risk of claims in 1981, plaintiffs did not know how many claims would materialize, nor did it know whether it ultimately would be held liable for those claims. Therefore, the concept of "known loss" is not a basis to deny coverage here. *See Johnstown,* 877 F.2d at 1153; *Flintkote Co. v. American Mut. Liab. Ins.,* No. 808–594, slip op. at 73 (Cal.Super.Ct. Oct. 15, 1992); *USR Indus., Inc. v. Royal Indem. Co.,* No. L–0055362–84, slip op. at 2 (N.J.Super.Ct.Law Div. July 17, 1992).

*Defendants' Affirmative Defenses*

Plaintiffs move for summary judgment on the affirmative defenses raised by Pacific, American Re, American Casualty, and Continental Casualty. Plaintiffs contend that summary judgment is appropriate because these defendants have failed to substantiate factually the affirmative defenses raised in their answers. The Court denies these motions, without prejudice, as premature.[26]

### Conclusion

For the foregoing reasons, the Court grants the partial summary judgment motions of Employers Surplus regarding the late notice of occurrence, the duty to defend, the cessation from work clause, and the per occurrence limit in multi-year policies; the partial summary judgment motions of American Re regarding the cessation from work clause, the per occurrence limit in multi-year policies, and the employee exclusion clause; and the partial summary judgment motions of American Casualty and Continental Casualty regarding the cessation from work clause. The Court denies the partial summary judgment motion of Employers Surplus regarding the applicable trigger of coverage, and the partial summary judgment motion of Pacific regarding the expect or intend exclusion. The Court also denies without prejudice plaintiffs' motions for summary judgment regarding the 'affirmative defenses raised by Pacific, American Re, American Casualty, and Continental Casualty. An appropriate Order accompanies this Opinion.

### *ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that the motions of Employers Surplus for partial summary judgment regarding the late notice of occurrence, the duty to defend, the cessation from work clause, and the per occurrence limit in multi-year policies are granted. It hereby further is

ORDERED, that the motions of American Re for partial summary judgment regarding the cessation from work clause, the per occurrence limit in multi-year policies, and the employee exclusion clause are granted. It hereby further is

ORDERED, that the motions of American Casualty and Continental Casualty for partial summary judgment regarding the cessation from work clause are granted. It hereby further is

ORDERED, that the motion of Employers Surplus for partial summary judgment regarding the applicable trigger of coverage is denied. It hereby further is

ORDERED, that the motion of Pacific for partial summary judgment regarding the expect or intend exclusion is denied. It hereby further is

ORDERED, that motions of plaintiffs for summary judgment regarding the affirmative defenses raised by Pacific, American Re, American Casualty, and Continental Casualty are denied without prejudice.

SO ORDERED.

---

26. In particular, the Court finds that many of defendants' affirmative defenses depend upon resolution of the trigger of coverage and number of occurrences issues, which have not been fully briefed and thus are not ripe for resolution.