**CSX TRANSPORTATION, INC., Appellant,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, Appellee.**

**Nos. 95–7106, 95–7107.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1996.

Decided April 26, 1996.

Leon B. Kellner argued the cause, for appellant, with whom Lee M. Straus and Robert W. Pommer, III, Washington, DC, were on the briefs.

Richard A. Ifft, Washington, DC, argued the cause and filed the brief, for appellee.

Before: EDWARDS, Chief Judge, SILBERMAN, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

CSX Transportation, Inc. appeals the district court's grant of summary judgment in favor of Commercial Union Insurance Company on coverage issues arising out of excess insurance policies issued to CSX. We affirm in part, reverse in part, and remand.

## I.

CSX is the successor in interest to a number of railroads that purchased excess insurance policies from insurance carriers to which Commercial Union is, in turn, the successor.[1] The 15 policies that remain in contention here, encompassing years between 1964 and 1973, provided coverage for liabilities in excess of an underlying limit that varied from policy to policy. A condition precedent to coverage under the policies is notice to the insurer of an "occurrence" likely to trigger the coverage.[2]

---

1. The predecessor railroads, the Chesapeake and Ohio Railway Company, the Baltimore and Ohio Railroad Company, Seaboard Coast Line Railroad Company, Louisville and Nashville Railroad Company, and Atlantic Coast Line Railroad Company, operated throughout much of the eastern half of the United States during the relevant period.

2. Each policy at issue contains one of three different notice provisions:

    1. The assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate advice thereof to the Underwriters....

2. In the event of an occurrence likely to exceed [the underlying limit], no law costs shall be incurred without consent of the Underwriters herein. After such occurrence, the Assured may proceed immediately with settlements and at the earliest practicable moment advise the representatives of the Underwriters of the occurrence, the adjustments so far made, and agree with the said representatives upon further settlements or legal proceedings.

3. The Insured shall advise the Company immediately or as soon thereafter as the Insured has knowledge of any occurrence or event in which the indemnity is or probably will be concerned, and shall forward full

CSX seeks coverage for liabilities arising out of asbestos-related injuries allegedly suffered by current and former employees of CSX. While information concerning the hazards associated with asbestos was available to the railroad industry to some degree throughout the last 50 years, no suit claiming injury from exposure to asbestos was brought against a CSX predecessor until 1979. From 1979 through 1984, however, the railroads were sued for asbestos-related injuries in a number of actions with claimed damages totaling many millions of dollars. By the end of 1984, all the predecessor railroads had notified Commercial Union of the lawsuits. Commercial Union responded that, in its view, the suits would be "adequately taken care of by the underlying insurance coverage" such that the Commercial Union excess insurance policies would not be involved. CSX sought a declaratory judgment that the insurer was obliged to provide coverage under the policies for CSX's asbestos-related liability.

Commercial Union moved for summary judgment on grounds that, despite its sanguine responses to CSX's notice of the lawsuits, *timely* notice of occurrence was due soon after the filing of the first asbestos claim in 1979. CSX's notice, given five years later, was untimely as a matter of law. The district court agreed. *Chesapeake & Ohio Ry. Co. v. Certain Underwriters at Lloyd's, London*, 834 F.Supp. 456, 459 (D.D.C.1993). But the court perceived a conflict between the laws of the potentially applicable jurisdictions as to whether a showing of prejudice to the insurer was required before untimely notice would relieve the insurer of its obligations under the policies. Commercial Union contended that the court should apply one state's law to the various policies—Virginia's. Virginia, which does not require an insurer to demonstrate prejudice before coverage is precluded, was the only state in which all of CSX's predecessors had operated. Apparently finding that CSX's failure to

contest the choice of law issue waived it, the court acceded again to Commercial Union's argument and entered summary judgment. The district court also determined that the "per-occurrence" limitations in three-year policies issued by Commercial Union applied only once for a given occurrence over the entire three-year term of the policies, not once per year. CSX appeals these aspects of the district court's decision.

## II.

Appellant, challenging the district court's determination that the predecessor railroads failed to give timely notice of occurrence, claims that the district court improperly focused its inquiry only on the *ad damnums* in complaints filed against CSX's predecessor railroads to decide when notice was due; in so doing, the court ignored both the language of the Commercial Union policies, and evidence that the *ad damnums* were unreliable indicators of whether coverage would be required. The policies only required notice to Commercial Union if an occurrence was "likely" to or would "probably" give rise to a claim under the policies. Because the policies provided excess insurance coverage, appellant argues that a lawsuit filed would only "likely" or "probably" give rise to a claim if the amount to be recovered against CSX was likely to exceed the underlying limit of a given policy. While the *ad damnums* in complaints filed against CSX were larger than the underlying limits in many cases, CSX's actual claims experience—in which claims were resolved for pennies on the dollar—demonstrated that the *ad damnums* were poor predictors as to the amounts that would finally be paid. And Commercial Union's own response to the notice that was ultimately given agreed with CSX's assessment that the claims were not likely to exceed the underlying limits.

■ The parties agree that the timeliness of the notice must be determined in accor-

information ... to [the agent] ... who [is] to be promptly advised of all occurrences or events considered likely to come within the scope of this excess insurance.

Occurrence is defined in some policies as "one or more accidents or series of accidents arising

out of or resulting from one event" and in others as "an accident, or a continuous or repeated exposure to conditions which result in personal injury or property damage which is neither expected nor intended from the standpoint of the Insured."

dance with an objective test, *i.e.*, were the insured's actions reasonable? *See, .e.g., Greycoat Hanover F Street Ltd. Partnership v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768–69 & n. 4 (D.C.App.1995); *Ruby v. Midwestern Indem. Co.*, 40 Ohio St.3d 159, 532 N.E.2d 730, 732 (1988); *Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla.Dist. Ct.App.1981).[3] The district court correctly stated that the notice obligation arises when, "viewed objectively, the facts and circumstances known to the insured would have suggested to a reasonable person the possibility of a claim likely to trigger the excess insurer's coverage." 834 F.Supp. at 459. In applying this standard, however, the district court appears to have misapprehended what constitute "the facts and circumstances known to the insured." CSX argued that its claims experience created a genuine issue of material fact, relying on *Norfolk & W. Ry. Co. v. Accident & Casualty Ins. Co.*, 796 F.Supp. 925, 928–29 (W.D.Va.1992), in which the court reviewed claims experience before determining that notice of occurrence was timely. But the district court refused to consider events postdating the filing of the first claim, stating that "[t]hat approach is contrary to the overwhelming weight of authority, which ... favors an objective determination of when the notice obligation accrues." 834 F.Supp. at 460 n. 9. The district court thus seems to have treated consideration of the railroads' actual claims experience as equivalent to employing a subjective test.

We think the district court erred. The court must inquire as to when a reasonable railroad, *knowing everything that the railroads in this case knew or should have known,* would give notice. That, of course, means that the railroads' actual experience with settlements and verdicts, notwithstanding large *ad damnums,* would be relevant in determining whether the railroads acted reasonably. Also relevant would be the insurer's own views, when made aware of the claims (or lawsuits) directed against the railroads, as to the likelihood that the excess policies would be implicated. Suffice it to say that these evidentiary considerations raise issues of material fact as to the reasonableness of CSX's actions.[4] Of course, issues of fact can become questions of law if a court concludes that no reasonable fact finder could find one way or the other. But we do not think the district judge so concluded— nor could he have on this record. On this ground alone, then, the case must be remanded.

That brings us to the conflict of laws/prejudice issue. The district court determined that neither Virginia nor Kentucky law requires a showing of prejudice to the insurer based on late notice, and that Florida and Ohio provide a rebuttable presumption that late notice prejudiced the insurer.[5] 834 F.Supp. at 460 n. 12. The court agreed with Commercial Union that "different states' laws on a particular question of law should not be applied to different insurance policies in a single action," and "adopt[ed]" Commercial Union's view that "the Court should apply Virginia law because Virginia is the only state through which all of the railroads insured by [Commercial Union] operated their lines during the terms of the applicable policies." 834 F.Supp. at 460. CSX "contended that the conflict among the applicable states is false, or, alternatively, that the choice of

---

3. Indeed, the Virginia Supreme Court has concluded that even policy language requiring notice when "an occurrence takes place which, *in the opinion of the insured,* involves or may involve liability on the part of the" insurer, "demands an objective determination." *Dan River, Inc. v. Commercial Union Ins. Co.*, 227 Va. 485, 317 S.E.2d 485, 489 (1984) (emphasis added).

4. That the test is objective does not mean that the question whether the railroads reasonably should have given notice earlier is not an issue of fact— just as in a negligence determination. *See, Lathem v. Sentry Ins.*, 845 F.2d 914, 918 (11th Cir.1988); *see also Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 488 (1st Cir.1992); *R.A. Weaver & Assoc., Inc. v. Haas & Haynie Corp.*, 663 F.2d 168, 175–76 (D.C.Cir.1980).

5. Appellant argues here that the district court incorrectly interpreted Kentucky law because it ignored a Kentucky Supreme Court opinion holding that failure to provide notice does not forfeit coverage absent a showing by the *insurer* that it is prejudiced. *Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798 (Ky.1991). As this argument apparently was not presented to the district court, and in light of our disposition of this matter, we do not address this question.

law issue requires separate analysis and briefing." *Id.* at 460 n. 12. The court, believing the conflict of laws to be "obvious," and noting that CSX "did not brief this issue or provide a detailed explanation as to why [it] elected not to," found that CSX "waived [its] opportunity to *brief* the applicable choice of law *with respect to this motion." Id.* (emphasis added).

■ Appellant raises before us a powerful argument that the district court's choice of Virginia law—assuming the issue was not waived—was erroneous. Although the selection of one jurisdiction's law to govern the proceedings surely simplifies the district court's task, we very much doubt that considerations of litigation convenience can override the *ex ante* expectations of parties to individual insurance contracts. *See, e.g., Liberty Mut. Ins. Co. v. Travelers Indemnity Co.,* 78 F.3d 639, 642–43 (D.C.Cir.1996) (applying different states' laws to different insurance policies). Even if applying one state's law to all the policies were appropriate, Virginia does not seem the best candidate; that the railroads all operated some track in Virginia appears to be of marginal relevance under the test employed in the District of Columbia for resolving conflicts of law. *See, e.g., Eli Lilly and Co. v. Home Ins. Co.,* 764 F.2d 876, 882 (D.C.Cir.1985), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1987) ("Indiana ... has a strong additional interest [in the insurance coverage dispute] because it is [the insured's] principal place of business and place of incorporation."); *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 654 F.Supp. 1334, 1355–56 (D.D.C.1986), *aff'd by* 944 F.2d 940 (D.C.Cir.1991), *cert. denied sub nom. Certain Underwriters at Lloyd's, London v. Independent Petrochemical Corp.,* 503 U.S. 1011, 112 S.Ct. 1777, 118 L.Ed.2d 435 (1992) (in insurance case, noting that "five factors have been considered by this court: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance of the contract; (4) the location of the subject matter of the contract; and (5) the place of the incorporation and the place of business of the parties.") (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS, § 188 (1971)); *cf. Liberty Mutual Ins.,* 78 F.3d at

642–43 ("Under District law, insurance contracts are governed by the substantive law of the state in which the policy is delivered."). And, we are dubious that Virginia can be said to have the "'most significant relationship' to the dispute." *Hercules & Co., Ltd. v. Shama Restaurant Corp.,* 566 A.2d 31, 40–41 (D.C.App.1989).

Our reading of the record and of the opinion below leaves us uncertain whether the district court determined that CSX waived its choice-of-law argument or merely any right to additional briefing on the question for purposes of the summary judgment motion. It is undisputed that Commercial Union raised the conflict question below, and argued that one state's law, Virginia's, ought to be applied to all the policies under consideration. CSX's response is less clear. In its Memorandum of Law in Opposition to [Commercial Union's] Motion for Summary Judgment on the Issue of Purported Late Notice, CSX contended that the conflict of laws proffered by Commercial Union was a "false" one because all the potentially applicable states' laws required a prejudice inquiry. In Virginia, for example, insurer prejudice is "a circumstance to be considered on the question of the materiality of the information which the insured withheld." CSX does not make this "false conflict" argument before us. To be sure, CSX asserted that Commercial Union had not established that Virginia had the "most significant contacts" as required by the District's choice of law test, and noted that "the determination of the applicable law in this action is highly fact intensive," but it provided no support for these statements merely saying that "[e]ven if this motion had so much as a theoretical basis under Virginia law, which it does not, all of these issues would require separate analysis and briefing."

CSX's response to Commercial Union's choice of law argument seems to us somewhat half-hearted, so the district court could have determined that CSX waived the issue. We doubt that such a determination could be thought an abuse of discretion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 332–33, 91 S.Ct. 795, 803, 28 L.Ed.2d 77 (1971); *Southern Pacific Com-*

*munications Co. v. American Tel. & Tel. Co.,* 740 F.2d 1011, 1018 (D.C.Cir.1984). However, the district court's opinion can also be interpreted to mean that CSX waived not the *argument* on choice of law, but merely its opportunity to say anything more about it for purposes of the summary judgment motion. If that is what the district court intended, CSX preserved its objection to the district court's choice of law conclusion. We simply do not know which reading is the correct one. Since if the argument were waived, we would not reach it, and would therefore uphold the district court's application of Virginia law, we remand this issue as well to the district court to clarify its ruling.

■ It will be recalled that CSX also appeals the district court's determination that the "per occurrence" limitations contained in five multi-year policies apply to any occurrence for the length of the policy term (three years) rather than once per year. While adverting to the contract language that states that Commercial Union's liability limits are for "each occurrence," CSX argues that because it paid a similar premium for one-year policies with similar per-occurrence limitations as for *each year* of the three-year policies, the latter must be read to provide coverage up to the per-occurrence limit for each of the three years. Interpreting the contract as the district court did, CSX contends, requires believing that CSX would buy a three-year policy that costs as much as three one-year policies but may provide as little as one-third the recovery in the event of an occurrence that lasts more than one year.

We are satisfied that the contract language setting forth the coverage limitations is plain, and that the district court interpreted it correctly. A typical provision states that the insurer agrees to indemnify CSX's predecessor railroad for "the excess of loss ... from *any one occurrence or series of occurrences arising out of any one event,* and then only up to $*[x]* for *each occurrence.*" The coverage limitation is devoid of any language suggesting that "each occurrence" should be read as "each occurrence each year." Nor are we convinced by CSX's premium argument. CSX points to the illogic of paying the same premium for a three-year policy as for

three one-year policies, unless the underlying conditions are the same—including the per-occurrence condition. In resolving an analogous dispute, the Fifth Circuit asked the question whether "carriers issuing three-year policies should bear the same burden as if they had issued three one-year policies." *Society of the Roman Catholic Church of the Diocese of Lafayette and Lake Charles, Inc. v. Interstate Fire & Casualty Co.,* 26 F.3d 1359, 1366 (5th Cir.1994). The court concluded that "[c]learly, a three-year 'occurrence' policy provides less coverage than three one-year policies, because an occurrence could last longer than one year. While an insurance policy should be interpreted in favor of the insured, we see no justification for providing more insurance coverage than the insured bargained for." *Id.* We agree. Moreover, "[i]f the language found in the policy is not ambiguous or otherwise susceptible of more than one meaning, the court's duty is to apply the plain meaning of the words and phrases used to the facts before it." *Carey Canada, Inc. v. Columbia Casualty Co.,* 940 F.2d 1548, 1556 (D.C.Cir.1991). We are thus not convinced that the premium terms of the multi-year policies undermine the district court's reading of the plain language of the coverage limitations.

\* \* \*

Accordingly, we reverse the grant of summary judgment on the issue of untimely notice and remand. On the choice of law question, we remand for the district court to clarify its finding as to CSX's waiver and for such other proceedings as are necessary. We affirm the summary judgment on the per-occurrence limitations in the multi-year policies.